## CLARA E. B. BILLOWS *vs.* JOSEPH B. MOORS.

Suffolk.    March 8, 1894. — June 23, 1894.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries from Defective Elevator — Licensee — Volunteer.*

The wife of the janitor of an apartment house or hotel, for the purpose of showing a new tenant where to hang clothes, went, at the request of her husband, to the roof of the hotel by the stairway. In returning she used a freight elevator, which she entered by stepping over a rail or bar placed across the entrance to the elevator about eighteen inches from the floor and locked. She chose that method of descent for her own convenience. She was not shown to have any knowledge of a rule forbidding the riding on the elevator, and she had seen others riding on it without objection from the superintendent of the building. *Held,* in an action against the owner of the hotel for damages for injuries sustained by reason of the alleged defective condition of the elevator, that the plaintiff was a volunteer, using the elevator without authority or license from the defendant, for the purpose of assisting her husband, and that the defendant owed no duty to her to see that the elevator was in a safe condition, but only the duty to abstain from wilful injury to her.

TORT, for personal injuries sustained by the plaintiff by reason of the alleged unsafe condition of an elevator in a building owned by the defendant. Writ dated March 17, 1892.

At the trial in the Superior Court, before *Aldrich*, J., there was evidence tending to show that the plaintiff was the wife of Charles M. Billows, and that on December 9, 1891, the date of the accident, she was living with her husband at the Hotel Edinburgh, an apartment house on Columbus Avenue in Boston, owned by the defendant, where her husband was employed as janitor. On that day, at the request of her husband, she went with one Mrs. Nichols, who had then recently moved into one of the apartments, to the roof of the hotel to show her where to hang clothes. In going up to the roof she used the stairs, but in coming down she used a freight elevator, or lift, which she entered at the top landing by stepping over a railing or bar placed across the entrance to the elevator, about eighteen inches from the floor, and locked. As she stepped upon the elevator, which was defective and out of repair, it fell to the bottom of the well, and she received the injuries in question.

The plaintiff testified that prior to the accident she had no knowledge of a rule forbidding persons to ride on the elevator, but she knew that by the orders of one Curtis, the superintendent in charge of the building, the elevator was not to be used by the inmates of the house, unless it was, after using, returned to the bottom of the well, and that before the accident she had seen persons riding on it in the presence of Curtis without objection from him. There was also evidence tending to show that it was easier to lower the elevator to the bottom of the well with some one on it than to haul it down by hand, and that the process of hauling it down by hand took from five to ten minutes.

This was all the evidence material to the plaintiff's case, at the conclusion of which the judge ruled that the action could not be maintained, and directed a verdict for the defendant, and reported the case for the determination of this court.

*J. J. Feely*, for the plaintiff.

*R. M. Morse*, (*C. E. Hellier* with him,) for the defendant.

MORTON, J. The hiring of the plaintiff's husband by the defendant did not include her, and there is nothing to show that the relation of master and servant existed between the plaintiff and defendant at the time of the injury complained of. When hurt the plaintiff was returning to the basement in the elevator,

after having been up to the roof at her husband's request with Mrs. Nichols to show her where to hang clothes. In going up she used the stairs, and could have done so in coming down. She used the elevator, it may fairly be assumed, for her own convenience; it being easier to lower it to the bottom of the well with some one on it than to haul it down by hand. The question is, what duty, if any, the defendant owed her in regard to the condition of the elevator. The answer depends on what the relation was in which she stood to him. It is plain that she was discharging no duty which she owed to him. Neither was she using the elevator by his invitation, express or implied. It is true that there was testimony tending to show that she had no knowledge of the rule forbidding persons to ride on the elevator, and that she had seen others do it without objection from Curtis. But these facts did not create of themselves any duty or liability on the part of the defendant towards her. If she had been in his employ, they might have furnished justification for what she did, if the locked bar could not be regarded as a notice to every one except those authorized to use it that in using the elevator they did so at their peril.

In going up to the roof with Mrs. Nichols, the plaintiff acted at her husband's request, and for the purpose of assisting him. In returning the elevator to the basement, she may also have been influenced in part by a desire to assist him. There was no necessity that she should ride down in the elevator, though doubtless it was more convenient to do so. But her husband's request, and the service which she rendered in consequence of it, could not, without the knowledge and assent of the defendant, create any liability on his part towards her. The husband had no authority to bind the defendant, and no obligation arose on the defendant's part towards her out of the gratuitous, incidental, unauthorized, and unratified service which he received from her through the assistance which she rendered to her husband. We doubt if the plaintiff could be regarded as a licensee. For that would give an express or implied permission, in spite of the apparent prohibition manifested by the locked bar. We think that she is to be regarded rather as a volunteer, using the elevator without any authority or license whatever from the defendant for the purpose of assisting her husband, and that the

defendant owed no duty to her to see that the elevator was in a safe condition, but only the duty to abstain from wilful injury to her.                                            *Exceptions overruled.*